MARIO N. ALIOTO (56433)
JOSEPH M. PATANE (72201)
LAUREN C. CAPURRO (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com; jpatane@tatp.com
laurenrussell@tatp.com

*Counsel for Plaintiffs*
**[Additional Counsel Appear on Signature Page]**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL STANLEY, JOHN R. SHANNON III, RICHARD JONES, GREGORY PAINTER, ANN MARIE PUTZIER, AND ALEX NICHOLSON, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| HEADWAY TECHNOLOGIES, INC.; HUTCHINSON TECHNOLOGY, INC.; MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD.; NAT PERIPHERAL (DONG GUAN) CO., LTD.; NAT PERIPHERAL (H.K.) CO., LTD.; NHK SPRING CO., LTD.; NHK INTERNATIONAL CORP.; NHK SPRING (THAILAND) CO., LTD.; SAE MAGNETICS (H.K.) LTD.; AND TDK CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**CASE NO.**

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

i

**COMPLAINT**

## **TABLE OF CONTENTS**

I.     **INTRODUCTION** ………………………………………………… 1

II.    **JURISDICTION AND VENUE** ………..……………………………… 2

III.   **THE PARTIES** …………………………………………………………4

IV.   **AGENTS AND CO-CONSPIRATORS** ……………………………... 7

V.    **INTERSTATE TRADE AND COMMERCE** …………………………8

VI.   **FACTUAL ALLEGATIONS** ……………………………………… 8

      A.     HDD Suspension Assemblies………………………………… 8

      B.     Structural Characteristics Of The HDD Suspension Assembly Market…... 9

            a.    Market Consolidation and Concentration……………………………. 9

            b.    Interrelated Business Relationships…………………………… 11

            c.    High Barriers to Entry ………………………………………… 11

            d.    Market Maturity ……………………………………… 12

            e.    Homogeneity Of Products…………………………………… 13

      C.     Defendants' Unlawful Price-Fixing and Market Allocation Agreements

           Agreements…………………………………………………… 13

      D.     Government Antitrust Investigations……………………………... 13

VII.  **CLASS ACTION ALLEGATIONS**…………………………………… 16

VIII. **PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**… 19

IX.   **PLAINTIFFS' CLAIMS ARE TIMELY** ……………………………… 22

      A.     Defendants Have Engaged In a Continuing Violation ………………… 22

      B.     Fraudulent Concealment Tolled The Statutes of Limitations …………... 22

X.    **VIOLATIONS ALLEGED**……………………………………………… 23

      A.     First Claim For Relief: Violation of Section 1 of the Sherman Act ……. 23

      B.     Second Claim for Relief: Violation of State Antitrust Statutes ………… 25

      C.     Third Claim For Relief: Violation of State Consumer Protection and
           Unfair Competition Statutes…………………………………………... 43

      D.     Fourth Claim For Relief: Unjust Enrichment and Disgorgement
           Of Profits………………………………………………………… 74

COMPLAINT

1

XI. **PRAYER FOR RELIEF**……………………………………………………..   75

XII.   **JURY DEMAND**.................................................................................   76

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1       Plaintiffs Russell Stanley, John R. Shannon III, Richard Jones, Gregory Painter, Ann

2   Marie Putzier and Alex Nicholson ("Plaintiffs"), individually and on behalf of a Class of all

3   those similarly situated in the United States, bring this action for damages and equitable relief

4   under state and federal antitrust, unfair competition, consumer protection, and unjust enrichment

5   laws, against the Defendants named herein, demanding trial by jury, and complaining and

6   alleging as follows:

7   <h1 style="text-align:center">I. <u>INTRODUCTION</u></h1>

8       1.    Plaintiffs bring this antitrust class action on behalf of individuals and entities that

9   indirectly purchased hard disk drive ("HDD") suspension assemblies (referred to hereinafter as

10   "HDD Suspension Assemblies") in the United States from Defendants, their predecessors, any

11   subsidiaries or affiliates thereof, or any of their named and unnamed co-conspirators, during the

12   period beginning at least as early as May 2008 until such time as the anticompetitive effects of

13   the Defendants' conduct on United States consumers of such products has ceased (the "Class

14   Period").  Plaintiffs allege that during the Class Period, the Defendants conspired to fix, raise,

15   maintain and/or stabilize prices of HDD Suspension Assemblies sold in the United States.

16   Because of Defendant's unlawful conduct, Plaintiffs and other Class Members paid artificially

17   inflated prices for HDD Suspension Assemblies (as defined below) and have suffered antitrust

18   injury to their business or property.

19       2.    As further detailed below, from at least May 2008 through at least April 2016,

20   Defendants entered into agreements with each other to refrain from price competition and

21   allocate their respective market shares for suspension assemblies used in HDDs. Pursuant to

22   their agreements not to compete, Defendants exchanged pricing information including

23   anticipated pricing quotes, which they used to inform their negotiations with U.S. and foreign

24   customers that purchased suspension assemblies and produced HDDs for sale in, or delivery to,

25   the U.S. and elsewhere. As a direct and proximate result of these agreements, Defendants

26   charged artificially high prices for HDD Suspension Assemblies, and purchasers of products

27   containing HDD Suspension Assemblies paid more for those products than they would have

28   paid in a competitive market.

**COMPLAINT**

3.     HDD Suspension Assemblies are a crucial component of HDDs. In announcing Defendant NHK Spring Co., Ltd.'s guilty plea to fixing prices of HDD Suspension Assemblies in violations of Section 1 of the Sherman Act, Assistant Attorney General Makan Delrahim of the Antitrust Division of the United States Department of Justice ("DOJ") said: "While these parts are physically small, they are critical to the operation and performance of electronic devices, and their impact on American consumers and businesses is direct and substantial."

4.     Defendants' collusive conduct is being investigated by the Antitrust Division of the DOJ, and by several other international competition authorities.  On July 29, 2019, the DOJ filed a one-count charge against NHK Spring Co., Ltd. for alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.  NHK pleaded guilty and agreed to pay $28.5 million in criminal fines and to cooperate in the ongoing investigation.

## II.   <u>JURISDICTION AND VENUE</u>

5.     This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover damages under state antitrust, unfair competition, and consumer protection laws, and to recover costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' violations of those laws.

6.     This Court has subject matter jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337.  The Court has subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

7.     This Court also subject matter jurisdiction over the state law claims pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, any member of a class of Plaintiffs is a citizen of a State and any defendant is a citizen or subject of a foreign state and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs.

**COMPLAINT**

8.     Venue is proper in this Judicial District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391 (b), (c) and (d), because during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

9.     This Court has personal jurisdiction over each of the Defendants because each Defendant, either directly or through ownership or control of its United States subsidiaries, conduct business throughout the United States, including this jurisdiction, and have purposefully availed themselves of the laws of the United States, including specifically the laws of the state of California and the individual states listed herein. Defendants' products are and were sold in the flow of interstate commerce, and Defendants' activities had a direct, substantial and reasonably foreseeable effect on such commerce.

10.    Defendants' conspiracy to fix the prices of HDD Suspension Assemblies substantially affected commerce throughout the United States and in each of the states identified herein, because Defendants directly or through their agents, engaged in activities affecting each such state. Defendants have purposefully availed themselves of the laws of each of the states identified herein in connection with their activities relating to the production, marketing, and sale and/or distribution of HDD Suspension Assemblies. Defendants produced, promoted, sold, marketed, and/or distributed HDD Suspension Assemblies, thereby purposefully profiting from access to indirect purchaser consumers in each such state. As a result of the activities described herein, Defendants:

       a.     Caused damage to the residents of the United States, including residents of the states identified herein;

       b.     Caused damage in the United States and each of the states identified herein by acts or omissions committed outside the United States and each such state and by regularly doing or soliciting business in the United States and each such state;

3

**COMPLAINT**

c.      Engaged in a persistent course of conduct within the United States and each state and/or derived substantial revenue from the marketing and sale of HDD Suspension Assemblies in the United States and each such state; and

d.      Committed acts or omissions that it knew or should have known would cause damage (and, in fact, did cause damage) in the United States and each such state while regularly doing or soliciting business in the United States and each such state, engaging in other persistent courses of conduct in the United States and each such state, and/or deriving substantial revenue from the marketing and sale of HDD Suspension Assemblies in the United States and each such state.

11.      The conspiracy described herein adversely affected every person nationwide, and more particularly, consumers in each of the states identified in this Complaint, who indirectly purchased Defendants' HDD Suspension Assemblies.  Defendants' conspiracy has resulted in an adverse monetary effect on indirect purchasers in each state identified herein.

12.      Prices of products containing HDD Suspension Assemblies in the United States and each state identified in this Complaint were raised to supra-competitive levels by the Defendants and their co-conspirators, thereby causing and continuing to cause, antitrust injury. Defendants expressly aimed their conspiracy at the United States marketplace and knew that commerce in HDD Suspension Assemblies in the United States and each of the states identified herein would be adversely affected by implementing the conspiracy.

### III.  **THE PARTIES**

13.      Plaintiff Russell Stanley is a California resident. During the relevant period, Mr. Stanley indirectly purchased HDD Suspension Assemblies from Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

14.      Plaintiff John R. Shannon III is a Kansas resident. During the relevant period, Mr. Shannon indirectly purchased HDD Suspension Assemblies from Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

4

**COMPLAINT**

15.     Plaintiff Richard Jones is a Montana resident. During the relevant period, Mr. Jones indirectly purchased HDD Suspension Assemblies from Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

16.     Plaintiff Gregory Painter is a Nevada resident.  During the relevant period, Mr. Painter indirectly purchased HDD Suspension Assemblies from Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

17.     Plaintiff Ann Marie Putzier is a South Dakota resident. During the relevant period, Ms. Putzier indirectly purchased HDD Suspension Assemblies from Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

18.     Plaintiff Alex Nicholson is a Tennessee resident. During the relevant period, Mr. Nicholson indirectly purchased HDD Suspension Assemblies from Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

**NHK Defendants**

19.     Defendant NHK Spring Co., Ltd. ("NHK Spring") is a Japanese corporation with its principal place of business located at 3-10 Fukuura, Kanazawa-ku, Yokohama, 236-0004, Japan. During the Class Period, NHK Spring manufactured, marketed, sold and/or distributed HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

20.     Defendant NHK International Corporation ("NHK International") is a U.S. subsidiary established by NHK Spring in October 1976, with its principal place of business located at 46855 Magellan Drive, Novi, Michigan 48377. During the Class Period, NHK International supplied, serviced, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

21.     Defendant NHK Spring (Thailand) Co., Ltd. ("NHK Thailand") is a Thailand-based subsidiary of NHK Spring, with its principal place of business located at Bangna Tower A, 6th-7th floor 2/3 Moo 14, Bangna-Trad Rd., (km. 6.5), Bangkaew, Bangplee, Samutprakarn 10540 Thailand. During the Class Period, NHK Thailand manufactured and/or supplied HDD

**COMPLAINT**

Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

22.     Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT DongGuan") is a China-based subsidiary of NHK Spring, with its principal place of business located at Conrad Hi-Tech Park, Shangsha, ZhenAn Road, ChangAn Town, Dongguan, Guangdong, 523830 China. During the Class Period, NAT DongGuan manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

23.     Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a China-based, wholly-owned subsidiary of NHK Spring, with its principal place of business located at Suite 15b-17, 9/F, Tower 3, China Hong Kong City, 33 Canton Rd., T.S.T., Kowloon, Hong Kong. During the Class Period, NAT H.K. manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

**TDK Defendants**

24.     Defendant TDK Corporation ("TDK") is a Japanese corporation with its principal place of business located at 2-5-1 Nihonbashi, Chuo-ku, Tokyo, 103-6128, Japan. TDK has a California-based branch located at 1745 Technology Drive, Suite 200, San Jose, CA 95110. During the Class Period, TDK manufactured, marketed and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

25.     Defendant Magnecomp Precision Technology Public Co. Ltd. ("MPT") is a Thailand-based subsidiary of TDK, with its principal place of business located at 162 M.5 Phaholyothin Road, T.Lamsai A.Wangnoi, Ayutthaya 13170, Thailand. During the Class Period, MPT manufactured, marketed and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

26.     Defendant SAE Magnetics (H.K.) Ltd. ("SAE Magnetics") is a China-based subsidiary wholly owned by TDK, with its principal place of business located at 6 Science Park

6

East Avenue, Hong Kong Science Park, Hong Kong, China. During the Class Period, SAE Magnetics manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

27.     Defendant Hutchinson Technology Inc. ("Hutchinson") is a Minnesota corporation with its principal place of business located at 40 West Highland Park Drive NE, Hutchinson, Minnesota 55350. TDK acquired Hutchinson on October 6, 2016.[1] During the Class Period, Hutchinson manufactured, marketed and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and affiliates, to customers in the United States.

28.     Defendant Headway Technologies, Inc. ("Headway") is a Delaware corporation wholly owned by TDK, with its principal place of business located at 682 South Hillview Drive, Milpitas, California 95035. Headway provides recording head products to the HDD industry and employs approximately 800 people in engineering, manufacturing and administration roles in Milpitas, California. During the Class Period, Headway manufactured and/or supplied HDD Suspension Assemblies, either directly or indirectly through its subsidiaries or affiliates, to customers in the United States.

## IV.   AGENTS AND CO-CONSPIRATORS

29.     On information and belief, various other persons, firms, corporations or other business entities, not currently known to Plaintiffs and therefore not named as defendants herein, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy and/or in furtherance of the anticompetitive, unfair or deceptive conduct.

30.     These other persons or entities have facilitated, adhered to, participated in, and/or communicated with others regarding the alleged conspiracy to fix prices of, and allocate market shares for, HDD Suspension Assemblies.  Plaintiffs reserve the right to name some or all of these persons or entities as defendants at a later date.

---

[1] https://www.tdk.com/corp/en/news_center/press/201610062540.htm.

7

**COMPLAINT**

1

## V.  INTERSTATE TRADE AND COMMERCE

2      31.     Throughout the Class Period, each Defendant or one or more of each of their

3  subsidiaries, sold HDD Suspension Assemblies in the United States in a continuous and

4  uninterrupted flow of interstate and international commerce, including through and into this

5  judicial district.

6      32.     During the Class Period, Defendants collectively controlled the vast majority of

7  the market for HDD Suspension Assemblies, both globally and in the United States.

8      33.     Defendants' unlawful activities, as described herein, took place within the flow

9  of interstate commerce as well as throughout the world, and had a direct, substantial and

10  reasonably foreseeable effect upon interstate and international commerce, including the United

11  States markets for HDD Suspension Assemblies.

12

## VI.  FACTUAL ALLEGATIONS

13  **A.     HDD and Suspension Assemblies**

14      34.     HDDs use magnetic recording heads to read from and write onto rapidly spinning

15  disks. An HDD is a non-volatile memory hardware device that permanently stores and retrieves

16  information. HDDs store digital content such as documents, pictures, music, videos, programs,

17  application preferences, and operating systems. HDDs can be external or internal. They can be

18  found in portable hard drives, desktop or laptop computers, game consoles, set-top boxes/DVRs,

19  network servers, and enterprise storage arrays in data centers. Their usage covers four broad

20  segments: desktop HDDs, mobile (laptop) HDDs, enterprise HDDs, and consumer electronics

21  HDDs. During the Class Period, over four billion units of HDDs were shipped worldwide.

22      35.     An HDD consists of one or more disk platters positioned around a motor-driven

23  spindle hub that rotates the disks. Each disk has data recorded electromagnetically in concentric

24  circles, or tracks, on the disk. A magnetic head, similar to a phonograph arm but in a relatively

25  fixed position, reads or writes the information on the tracks. Two heads, one on each side of a

26  disk, read or write the data as the disk spins.

27

28

**COMPLAINT**

36.     Suspension assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.[2] Suspension assemblies are a critical component to position the magnetic read/write head above the data on the surface of the spinning disks in the HDD. The distance between the read/write head and the disk platter is referred to as "flying height." The accuracy of this positioning over the tracks on the disk is a large determinant of areal density and subsequently each disk's data capacity. A modern disk drive's flight height is smaller than the circuit size of today's most modern microprocessors. The suspension has a built-in actuator that is controlled to hold the head within a very small tolerance of the centerline of the data track.[3]

37.     The suspension assembly consists of three main components that are welded to each other: a base plate, a load beam, and a flexure.

**B.     Structural Characteristics Of The HDD Suspension Assembly Market**

38.     The structural characteristics of the HDD Suspension Assembly market are conducive to the type of effective collusive activity alleged in this Complaint.  These characteristics include market concentration, ease of information sharing, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry, maturity of the HDD Suspension Assembly market, and homogeneity of products.

**a.     Market Consolidation and Concentration**

39.     A concentrated market is more susceptible to effective collusion and other anticompetitive practices.  The HDD Suspension Assembly market was highly concentrated during the Class Period.

40.     The demand for HDD Suspension Assemblies depends on the demand for HDDs, which in turn is driven by the demand for HDD-based capacity, primarily fueled by the ever-expanding consumer storage consumption and enterprise storage requirements.

---

[2] *See* https://www.magnecomp.tdk.com/Home/Core (describing defendant TDK's "Core Business: Suspension Assemblies").

[3] *See* https://www.magnecomp.tdk.com/Education/edu?view=01 ("What is a Suspension Assembly?").

9

**COMPLAINT**

41.    More than 200 companies have manufactured HDDs over time, most of which disappeared through bankruptcy or acquisitions. By 2008, consolidations had concentrated production to just a handful of HDD manufacturers. Consolidation continued during the Class Period. Today, only three HDD manufacturers remain: Western Digital Corporation, Seagate Technology, LLC, and Toshiba Electronics Devices & Storage Corporation. Their market shares are approximately 40%, 37%, and 23% respectively.[4]

42.    As the HDD market became increasingly concentrated, the Suspension Assembly industry experienced a similar trend of consolidation.

43.    By 2005, Hutchinson held approximately 55% of the world market share and NHK Spring accounted for approximately 22% of the world market share in the suspension assembly industry.[5] MPT, created through the 2005 merger between the Data Storage Division of Magnecomp International Ltd. and KR Precision Public Company, occupied roughly 20% of the market.[6]

44.    Further consolidation took place shortly before and during the Class Period. In 2007, TDK announced its acquisition of a majority share of Thailand-based MPT and began producing HDD Suspension Assemblies following the acquisition.

45.    By 2012, Hutchinson held 23.4% of the world market share in the suspension assembly industry, NHK Spring held 39.3%, and MPT held a 33.2% of the market.[7]

46.    In October 2016, TDK acquired Hutchinson, increasing TDK's market share to 55-60%. Following the acquisition, TDK and NHK became the world's only two primary producers of HDD Suspension Assemblies.[8]

---

[4] Forbes (Feb. 5, 2018), *HDD Growth in Nearline Markets, available at* https://www.forbes.com/sites/tomcoughlin/2018/02/05/hdd-growth-in-nearline-markets/#11e0e4152997.

[5] MPT 2005 Form 56-1, at 10, *available at* http://capital.sec.or.th/webapp/corp_fin/datafile/56/20050520E06.DOC.

[6] *Id.;* https://www.magnecomp.tdk.com/Home/About.

10

**COMPLAINT**

47.     Collectively, Defendants controlled over 95% of the global market for HDD Suspension Assemblies throughout the Class Period.

### b.     Interrelated Business Relationships

48.     The HDD Suspension Assembly industry has a close-knit nature whereby multiple business relationships between Defendants blurred the lines of competition and provided ample opportunity to collude. These business relationships also created a unity of interest among Defendants so that the conspiracy was easier to implement and enforce than if such interrelationships did not exist.

49.     For example, until March of 2015, TDK and NHK Spring—two of the only three major competitors in the suspension assembly market—maintained a joint venture to manufacture suspension assemblies. Specifically, TDK's wholly owned subsidiary SAE Magnetics operated a joint venture with NHK Spring in the suspension assembly manufacturing company NAT H.K.[9] Throughout the Class Period, SAE Magnetics was also one of Hutchinson's top three customers.[10] In addition, Defendants also cross-licensed each other's products, including suspension assemblies.[11]

### c.     High Barriers to Entry

50.     A collusive arrangement that raises product prices above competitive levels would ordinarily, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new

---

[7] Dr. Robert N. Castellano, The Dynamics of the HDD Industry and its Impact on CMP, at 9, *available at*
https://pdfs.semanticscholar.org/c293/573aec70fec1d3abcd79f1e86bcdc005c044.pdf.

[8] 2017 TDK Corporation Annual Report, at 45, *available at*
https://www.tdk.com/ir/ir_library/annual/2017/html/index.html

[9] *See TDK Subsidiary dissolve Joint Venture of HDD Suspension Manufacturing Company*, *available at* https://www.tdk.com/corp/en/news_center/press/201504011768.htm.

[10] *See, e.g.*, Hutchinson 2008 Form 10-K, at 5, 2012 Form 10-K, at 4, and 2015 Form 10-K, at 4.

[11] *See Hutchison, Magnecomp drop lawsuits, cooperate, available at*
https://www.bizjournals.com/twincities/stories/2001/12/03/daily8.html.

11

**COMPLAINT**

entrants are less likely. Thus, barriers to entry help to facilitate the formation and maintenance of a successful cartel.

51.     There are substantial barriers to entry in the HDD Suspension Assembly industry. It would require substantial time, resources and industry knowledge to even potentially overcome the barriers to entry. It is also extremely unlikely that a new producer would enter the market in light of the declining demand for HDD products. As Defendant Hutchinson conceded, "we believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."[12]

52.     Collectively, Defendants also own the majority of patents for HDD Suspension Assemblies. These patents potentially place a significant and costly burden on potential new entrants, which must avoid infringing on the patents when entering the market with a new product.

### d.     <u>Market Maturity</u>

53.     Newer industries are typically characterized by rapid growth, innovation and high profits. The HDD Suspension Assembly market is a mature one, and like many mature industries, is characterized by slim profit margins, creating a motivation to collude.

54.     Demand for HDDs and therefore for suspension assemblies experienced a general downward trend during the Class Period. Static or declining demand is another factor which makes the formation of an effective collusive arrangement more likely because it provides a greater incentive to firms to avoid price competition.

55.     In addition, increased demand for other types of data storage technology, such as those that utilize solid state storage or flash memory, has limited growth opportunities for disk drive-based data storage. This was one of the factors which led Defendants to engage in this alleged price-fixing scheme in order to slow down declining prices.

---

[12] Hutchinson Technology Inc. 2008 Form 10-K, at 6 and 2015 Form 10-K, at 4.

**COMPLAINT**

1

e.    **Homogeneity of Products**

2     56.    HDD Suspension Assemblies are commodity-like products which are

3  interchangeable among products of the same type and across manufacturers. One Defendant's

4  product for a particular application, such as a particular type/size of disk drive (*e.g.*, 2.5"

5  notebook HDD form factor or 3.5" desktop HDD form factor), is substitutable for another's. It is

6  easier to form and sustain a cartel when the product in question is commodity-like because it is

7  easier to agree on prices to charge and to monitor those prices once an agreement is formed.

8  **C.    Defendants' Unlawful Price-Fixing and Market Allocation Agreement**

9     57.    From at least as early as May 2008 and continuing until at least April 2016,

10  Defendants knowingly entered into and engaged in a conspiracy to suppress and eliminate

11  competition by fixing prices for HDD Suspension Assemblies sold in the United States and

12  elsewhere.

13     58.    To carry out their conspiracy, Defendants engaged in a variety of unlawful

14  activities. At times, Defendants engaged in discussions and attended meetings during which they

15  reached agreements to refrain from competing on prices for, fix the prices of, and allocate their

16  respective market shares for, HDD Suspension Assemblies to be sold in the U.S. and globally.

17     59.    Defendants also exchanged HDD Suspension Assemblies pricing information,

18  including anticipated pricing quotes. Defendants used the exchanged pricing information to

19  inform their negotiations with U.S. and foreign customers that purchased HDD Suspension

20  Assemblies and produced HDDs for sale in, or delivery to, the United States and elsewhere.

21  **D.    Government Investigations**

22     60.    In July 2016, the Japanese Fair Trade Commission ("JFTC") raided Defendants

23  TDK and NHK based on suspicion that the two companies and or their subsidiaries had colluded

24  to fix the prices for HDD suspension components. On February 9, 2018, the JFTC issued a cease

25  and desist order to both Defendants, finding that they substantially restrained competition in the

26

27

28

13

**COMPLAINT**

HDD Suspension Assemblies market by agreeing to maintain sale prices. The JFTC also imposed a 1.1 billion yen (approximately $9.9 million) surcharge on the two companies.[13]

61.    Concurrently with the JFTC investigation, the DOJ opened an investigation into the HDD Suspension Assembly industry for suspicion of potential collusive conduct. On July 26, 2016, Defendant Hutchinson received a letter from the DOJ requesting documents relating to the investigation and expressed its intent to fully cooperate with the DOJ's investigation.[14] At the time Hutchinson received the DOJ's letter, TDK's pending acquisition of Hutchinson was under review by the U.S. Federal Trade Commission.[15]

62.    Subsequently, in April 2018, the Brazilian antitrust authority Administrative Council for Economic Defense ("CADE") launched an investigation into allegations that producers colluded to fix prices in the market for hard disk components between 2003 and 2016. Companies being investigated include Hutchinson, MPT, NHK Spring, TDK, and SAE Magnetics. At least 38 individuals are also being investigated.[16]

63.    According to the CADE, "there is strong evidence that the cartel agreed prices in response to client quotations, divided markets, shared commercially and competition sensitive information mainly in respect of current and proposed prices for suspension assemblies, private bids of clients, allocation of client demand, production capacity of each company and a usage fee structure with the purpose of stabilizing prices and reducing competition in the sale of suspension assemblies."[17]

---

[13] *JFTC Feb. 9, 2018 Press Release, available at* https://www.jftc.go.jp/houdou/pressrelease/h30/feb/180209_1.html.

[14] *See Hutchison Technology provides update on Legal and Regulatory Actions, available at* https://www.globenewswire.com/news-release/2016/07/27/859501/0/en/Hutchinson-Technology-Provides-Update-on-Legal-and-Regulatory-Actions.html.

[15] *Id.*

[16] *See CADE's General Superintendence Probes Cartel in the Global Market for Hard Disk Components, available at* http://en.cade.gov.br/cades-general-superintendence-probes-cartel-in-the-global-market-for-hard-disk-components-1.

[17] CADE's General Superintendent Coordination of Antitrust Analysis 4/2018 (SEI No. 0459666), available at http://en.cade.gov.br/. 14

64.     On July 29, 2019, the DOJ filed a one-count information against NHK Spring charging the company with fixing prices on HDD Suspension Assemblies. According to the information, NHK Spring and its co-conspirators participated in the following activities for the purpose of forming and carrying out the conspiracy:

a.      Discussions and meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for, HDD Suspension Assemblies sold in the United States and elsewhere;

b.      Exchanging HDD Suspension Assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere;

c.      Replying on their agreements not to compete and using the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD Suspension Assemblies and produced HDDs for sale in, or delivery to, the United States and elsewhere;

d.      Selling HDD Suspension Assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices; and

e.      Accepting payment for HDD Suspension Assemblies sold in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices.

65.     On the same day, NHK Spring pleaded guilty to the DOJ's charge and agreed to pay $28.5 million in criminal fines and to cooperate in the ongoing investigation.[18]

66.     In announcing NHK Spring's guilty plea, the DOJ noted that HDD Suspension Assemblies "are critical to the operation and performance of electronic devices, and their impact on American consumers and businesses is direct and substantial."[19]

//

---

[18] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives; Company Agrees to Pay $28.5 Million Criminal Antitrust Fine, available at* https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

[19] *Id.*

**COMPLAINT**

1

## VII.  CLASS ACTION ALLEGATIONS

2

67.     Plaintiffs bring this action individually and as a class action pursuant to the

3

provisions of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable

4

and injunctive relief on behalf of the following class (the "Nationwide Class"):

5

> All persons and entities who, during the Class Period, indirectly purchased for their own use and not for resale, a product which included one or more HDD Suspension Assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

6

7

8

9

10

11

12

68.     Plaintiffs also bring this action on behalf of themselves and as a class action

13

pursuant to the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure

14

and/or the respective state statute(s), seeking damages pursuant to state antitrust, unfair

15

competition, and consumer protection laws as well as common law unjust enrichment on behalf

16

of the following class (the "Damages Class"):

17

> All persons and entities who, during the Class Period, in the Indirect Purchaser States,[20] purchased for their own use and not for resale a product which included one or more HDD Suspension Assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

18

19

20

21

22

23

24

---

25

[20] The "Indirect Purchaser States" are: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

26

27

28

**COMPLAINT**

69.     This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.     The Classes are ascertainable and there is a well-defined community of interest among members of the Classes;

b.     Based upon the nature of trade and commerce involved and the number of indirect purchasers of HDD Suspension Assemblies, Plaintiffs believe that the number of Class members is very large, and therefore joinder of all Class members is not practicable;

c.     Plaintiffs' claims are typical of Class members' claims because Plaintiffs indirectly purchased HDD Suspension Assemblies manufactured by Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of Class members and the relief sought is common to the Classes;

d.     The following common questions of law or fact, among others, exist as to the members of the Classes:

i.     Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain, or stabilize the prices of HDD Suspension Assemblies sold in the United States;

ii.     Whether the combination or conspiracy caused HDD Suspension Assembly prices to be higher than they would have been in the absence of Defendants' conduct;

iii.     The operative time period of Defendants' combination or conspiracy;

iv.     Whether Defendants' conduct caused injury to the business or property of Plaintiffs and members of the Classes;

v.     Whether Plaintiffs and members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

vi.     Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and members of the Classes;

COMPLAINT

1          vii.     The appropriate injunctive and related equitable relief for the

2  Nationwide Class;

3          viii.    The appropriate measure of the amount of damages suffered by

4  the Damages Class;

5          ix.      Whether Defendants' conduct violates Section 1 of the Sherman

6  Act, 15 U.S.C. ¶ 1, as alleged in the First Claim for Relief;

7          x.       Whether Defendants' conduct violates the Indirect Purchaser

8  States' antitrust laws as alleged in the Second Claim for Relief;

9          xi.      Whether Defendants' conduct violates the Indirect Purchaser

10  States' unfair competition and consumer protection laws as alleged in the Third Claim for

11  Relief; and

12          xii.     Whether Defendants' conduct violates unjust enrichment

13  principles as alleged in the Fourth Claim for Relief.

14      e.     These and other questions of law and fact common to members of the

15  Classes predominate over any questions affecting only individual members, including legal and

16  factual issues relating to liability and damages;

17      f.      After determination of the predominant common issues identified above,

18  if necessary or appropriate, the Classes can be divided into logical and manageable subclasses;

19      g.     Plaintiffs will fairly and adequately protect the interests of the Classes in

20  that Plaintiffs have no interests that are antagonistic to other members of the Classes and have

21  retained counsel competent and experienced in the prosecution of class actions and antitrust

22  litigation to represent them and the Classes;

23      h.     A class action is superior to other available methods for the fair and

24  efficient adjudication of this litigation since individual joinder of all damaged Class members is

25  impractical.  The damages suffered by the individual Class members are relatively small, given

26  the expense and burden of individual prosecution of the claims asserted in this litigation.  Thus,

27  absent the availability of class action procedures it would not be feasible for Class members to

28  redress the wrongs done to them.  Even if the Class members could afford individual litigation,

18

**COMPLAINT**

the court system could not.  Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and the court system.  Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision in a single court; and

        i.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## VIII.   PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

70.    Defendants' price-fixing conspiracy had the following effects, among others:

    a.    Price competition has been restrained or eliminated with respect to HDD Suspension Assemblies;

    b.    The prices of HDD Suspension Assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

    c.    Indirect purchasers of HDD Suspension Assemblies have been deprived of free and open competition; and

    d.    Indirect purchasers of HDD Suspension Assemblies paid artificially inflated prices for HDD Suspension Assemblies.

71.    During the Class Period, Plaintiffs and members of the Classes paid supra-competitive prices for HDD Suspension Assemblies. HDD manufacturers and other purchasers of HDD Suspension Assemblies passed on inflated prices to Plaintiffs and members of the Classes. Those overcharges have unjustly enriched Defendants.

72.    The markets for HDDs and HDD Suspension Assemblies are inextricably linked and intertwined because the market for HDD Suspension Assemblies exists to serve the HDD market. Without the HDDs, the HDD Suspension Assemblies have little to no value because they have no independent utility.

73.    HDD Suspension Assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD. As a result, HDD Suspension Assemblies follow a traceable physical chain of distribution from the Defendants to Plaintiffs

19

1    and members of the Classes, and costs attributable to HDD Suspension Assemblies can be

2    traced through the chain of distribution to Plaintiffs and members of the Classes.

3        74.    Just as HDD Suspension Assemblies can be physically traced through the supply

4    chain, so can their prices be traced to show that changes in the prices paid by direct purchasers

5    of HDD Suspension Assemblies affect prices paid by indirect purchasers for HDDs containing

6    HDD Suspension Assemblies.

7        75.    While even a monopolist would increase its prices when the cost of its inputs

8    increased, the economic necessity of passing through cost changes increases with the degree of

9    competition a firm faces.

10       76.    The economic and legal literature has recognized that unlawful overcharges in a

11   component normally result in higher prices for products containing that price-fixed component.

12   Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of

13   the Business and Public Policy Group at the Haas School of Business at the University of

14   California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at

15   Southwestern School of Law and author of the Handbook of the Law of Antitrust) have

16   observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not

17   the exception; it is the rule."[21]

18       77.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for

19   Information and Computer Science and Professor of Economics and Public Policy at the

20   University of Michigan), an expert who presented evidence in a number of indirect purchaser

21   cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that

22   case granting class certification):

23           As is well known in economic theory and practice, at least some of the
             overcharge will be passed on by distributors to end consumers. When the
24           distribution markets are highly competitive, as they are here, all or nearly the
             entire overcharge will be passed on through to ultimate consumers…. Both of
25           Microsoft's experts also agree upon the economic phenomenon of cost pass

26

27   _____

     [21] Robert G. Harris & Lawrence A. Sullivan, Passing on the Monopoly Overcharge: A
28   Comprehensive Policy Analysis, 128 U. PA. L. REV. 268, 275 (1979).

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

through and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.

78.     The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of HDD Suspension Assemblies and, as a direct and foreseeable result, the price of products containing HDD Suspension Assemblies. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis – called regression analysis – is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of HDD Suspension Assemblies on prices for products containing HDD Suspension Assemblies even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of HDD Suspension Assemblies affects changes in the price of assembled products, such as computers. In such models, the price of HDD Suspension Assemblies would be treated as an independent or explanatory variable. The model can isolate how changes in the price of HDD Suspension Assemblies impact the price of products containing HDD Suspension Assemblies while controlling for the impact of other price-determining factors.

79.     The precise amount of the overcharge impacting the prices of products containing HDD Suspension Assemblies can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and class members can be quantified.

80.     By reason of the violations of the antitrust law alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HDD Suspension Assemblies than they would have paid in the absence of the

21

**COMPLAINT**

Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## IX.   PLAINTIFFS'S CLAIMS ARE TIMELY

### A.   Defendants Have Engaged In A Continuing Violation

81.   Plaintiffs repeat and re-allege the allegations set forth above.

82.   Plaintiffs and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until shortly before the filing of this Complaint.

83.   Plaintiffs and members of the Classes are consumers who purchased HDDs containing HDD Suspension Assemblies for their own use and not for resale.  Plaintiffs and members of the Classes did not become aware of Defendants' unlawful conduct until the DOJ announced the indictment and guilty plea by defendant NHK Spring. Moreover, Plaintiffs and members of the Classes had no direct contact or interaction with the Defendants and had no means from which they could have discovered that the Defendants were engaged in the combination and conspiracy before the DOJ's announcement of NHK Spring's guilty plea.

84.   This Complaint alleges a continuing course of conduct (including conduct within the applicable limitations periods), and Defendants' unlawful conduct has inflicted continuing and accumulating harm within the applicable statutes of limitations.

85.   Each time Defendants engaged in an unlawful act complained of here, Defendants undertook an overt act that has inflicted harm on Plaintiffs and other members of the Classes.

86.   Because Defendants have engaged in a continuing course of conduct, Plaintiffs' claims are timely.

### B.   Fraudulent Concealment Tolled the Statute of Limitations

87.   In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and

**COMPLAINT**

members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 2019.

88.     Before that time, Plaintiffs and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for HDD Suspension Assemblies throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that indicated to Plaintiffs that they were being injured by Defendants' unlawful conduct.

89.     By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing. HDD Suspension Assemblies are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered the HDD Suspension Assemblies industry to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' HDD Suspension Assemblies prices before July 2019.

90.     Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a

91.     For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until July 2019.

## X.  VIOLATIONS ALLEGED

### A.    First Claim for Relief: Violation of Section 1 of the Sherman Act

92.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

93.     Beginning at a time unknown to Plaintiffs, but at least as early as May 2008 through at least April 2016, the exact dates being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

23

**COMPLAINT**

94.     In particular, Defendants have combined and conspired to fix, raise, maintain or stabilize the prices of HDD Suspension Assemblies sold in the United States.

95.     Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained the market prices of HDD Suspension Assemblies as herein alleged.

96.     The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of HDD Suspension Assemblies they sold in the United States and elsewhere.

97.     Defendants intentionally directed their anticompetitive acts at the United States market for HDD Suspension Assemblies and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HDD Suspension Assemblies throughout the United States.

98.     In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

a.     Participated in meetings and conversations to discuss the prices and supply of HDD Suspension Assemblies in the United States and elsewhere;

b.     Agreed to manipulate prices and limit supply of HDD Suspension Assemblies sold in the United States and elsewhere in a manner that deprived direct and indirect purchasers of HDD Suspension Assemblies of free and open competition;

c.     Issued price announcements and price quotations in accordance with the agreements reached;

d.     Sold HDD Suspension Assemblies to customers in the United States and elsewhere at non-competitive prices; and

e.     Invoiced customers in the United States and elsewhere at the agreed-upon, fixed prices for HDD Suspension Assemblies and transmitting such invoices via U.S. mail and other interstate means of delivery.

24

**COMPLAINT**

99.     The combination and conspiracy alleged herein has had the following effects, among others:

    a.      Price competition in the sale of HDD Suspension Assemblies has been restrained, suppressed and/or eliminated in the United States;

    b.      Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.      Plaintiffs and members of the Nationwide Class who purchased HDD Suspension Assemblies indirectly from Defendants and their co-conspirators have been deprived the benefits of free and open competition.

100.     As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, Plaintiffs and the members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for HDD Suspension Assemblies purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

101.     These violations are continuing and will continue unless enjoined by this Court.

102.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Nationwide Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

**B.      <u>Second Claim For Relief: Violation of State Antitrust Statutes</u>**

103.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

104.     During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD Suspension Assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

**COMPLAINT**

105.     The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels the prices for HDD Suspension Assemblies and to allocate customers for these products in the United States.

106.     In formulating and effectuating this conspiracy, Defendants and their coconspirators performed acts in furtherance of the combination and conspiracy, including:

a.     Participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price HDD Suspension Assemblies at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to HDD Suspension Assemblies sold in the United States;

b.     Allocating customers and markets for HDD Suspension Assemblies in the United States in furtherance of their agreements; and participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

107.     Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to HDD Suspension Assemblies.

108.     Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

109.     Defendants have entered into unlawful agreements in restraint of trade in violation of the **Arizona Uniform State Antitrust Act,** Ariz. Rev. Stat. §§44-1401, *et seq.*

a.     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies Products.

26

b.      During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, the Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§44-1401, *et seq*. Accordingly, Plaintiffs and the members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

110.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **California Cartwright Act,** Cal. Bus. & Prof. Code § 16700, *et seq.*

a.      During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code.  Defendants have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of HDD Suspension Assemblies at supra-competitive levels.

b.      The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for HDD Suspension Assemblies.

c.      For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above and the following: (1) fixing, raising, stabilizing and/or maintaining the price of HDD Suspension Assemblies; and (2) allocating among themselves the production of HDD Suspension Assemblies.

27

**COMPLAINT**

d.      The combination and conspiracy alleged herein has had, *inter alia,* the following effects: (1) price competition in the sale of HDD Suspension Assemblies has been restrained, suppressed and/or eliminated in the State of California; (2) prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of California; and (3) those who purchased HDD Suspension Assemblies directly or indirectly from Defendant and its co-conspirators have been deprived of the benefit of free and open competition.

e.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 *et seq.* of the California Business and Professions Code, Plaintiffs seeks treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

111.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **District of Columbia Antitrust Act**, D.C. Code § 28-4501, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

c.      As a direct and proximate result of Defendant's unlawful conduct, the DC Plaintiffs and members of the District of Columbia Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

28

**COMPLAINT**

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and the members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

112.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Hawaii Antitrust Act**, Haw. Rev. Stat. § 480-4.

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Code, H.R.S. § 480-4.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Code, H.R.S. § 480-1 *et seq.*

113.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Iowa Competition Law**, Iowa Code § 553.1, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages

29

Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1 et *seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1.

114.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Kansas Restraint of Trade Act**, Kan. Stat. Ann. § 50-101, *et seq*.

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 *et seq.* Accordingly, Plaintiffs and

**COMPLAINT**

members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§50-101 *et seq.*

115.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Maine Antitrust Statute**, Me. Rev. Stat. Ann. Tit. 10, § 1101, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Maine Rev. Stat. Ann. 10, §§1101 *et seq.*

116.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Michigan Antitrust Reform Act**, Mich. Comp. Laws § 445.771, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

31

the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.  During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771 *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Michigan Comp. Laws Ann. §§ 445.771 *et seq.*

117.  Defendants have entered into unlawful agreements in restraint of trade in violation of the **Minnesota Antitrust Law**, Minn. Stat. § 325D.49, *et seq.*

a.  Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.  During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.50 *et seq.* Accordingly, Plaintiffs and

**COMPLAINT**

members of the Damages Class seek all forms of relief available under Minnesota Stat. §§ 325D.50 *et seq.*

118.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Mississippi Antitrust Statute**, Miss. Code Ann. § 75-21-1, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Mississippi Code Ann. §75-21-1 *et seq.*

119.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Nebraska Junkin Act**, Neb. Rev. Stat. § 59-801, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

33

**COMPLAINT**

the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. § 59-801 *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Nebraska Rev. Stat. § 59-801 *et seq.*

120.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Nevada Unfair Trade Practices Act**, Nev. Rev. Stat. § 598A.010, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A *et seq.* Accordingly, Plaintiffs

34

**COMPLAINT**

1   and members of the Damages Class seek all forms of relief available under Nevada Rev. Stat.

2   Ann. §§ 598A *et seq.*

3        121.    Defendants have entered into unlawful agreements in restraint of trade in

4   violation of **New Hampshire's Antitrust Statute**, N.H. Rev. Stat. Ann. tit. XXXI, § 356:1, *et*

5   *seq.*

6           a.    Defendants' combinations or conspiracies had the following effects: (1)

7   HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated

8   throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed,

9   maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs

10   and members of the Damages Class were deprived of free and open competition; and (4)

11   Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices

12   for HDD Suspension Assemblies.

13           b.    During the Class Period, Defendants' illegal conduct substantially

14   affected New Hampshire commerce.

15           c.    As a direct and proximate result of Defendants' unlawful conduct,

16   Plaintiffs and members of the Damages Class have been injured in their business and property

17   and are threatened with further injury.

18           d.    By reason of the foregoing, Defendants have entered into agreements in

19   restraint of trade in violation of N.H. Rev. Stat. Ann. Tit. XXXI, § 356.1, *et seq.* Accordingly,

20   Plaintiffs and members of the Damages Class seek all forms of relief available under the N.H.

21   statute.

22        122.    Defendants have entered into unlawful agreements in restraint of trade in

23   violation of the **New Mexico Antitrust Act**, N.M. Stat. § 57-1-1, *et seq.*

24           a.    Defendants' combinations or conspiracies had the following effects: (1)

25   HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated

26   throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed,

27   maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and

28   members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

**COMPLAINT**

1   and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD

2   Suspension Assemblies.

3            b.      During the Class Period, Defendants' illegal conduct substantially

4   affected New Mexico commerce.

5            c.      As a direct and proximate result of Defendants' unlawful conduct,

6   Plaintiffs and members of the Damages Class have been injured in their business and property

7   and are threatened with further injury.

8            d.      By reason of the foregoing, Defendants have entered into agreements in

9   restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1 *et seq.* Accordingly, Plaintiffs

10  and members of the Damages Class seek all forms of relief available under New Mexico Stat.

11  Ann. §§ 57-1-1 *et seq.*

12      123.    Defendants have entered into unlawful agreements in restraint of trade in

13  violation of the **New York Donnelly Act**, N.Y. Gen. Bus. Law, § 340, *et. seq.*

14           a.      Defendants' combinations or conspiracies had the following effects: (1)

15  HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated

16  throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained,

17  and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the

18  Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

19  the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

20  Assemblies.

21           b.      During the Class Period, Defendants' illegal conduct substantially

22  affected New York commerce.

23           c.      As a direct and proximate result of Defendants' unlawful conduct,

24  Plaintiffs and members of the Damages Class have been injured in their business and property

25  and are threatened with further injury.

26           d.      By reason of the foregoing, Defendants have entered into agreements in

27  restraint of trade in violation of New York General Business Law § 340 *et seq.*  The conduct set

28  forth above is a *per se* violation of the Act.  Accordingly, Plaintiffs and members of the

36

Damages Class seek all forms of relief available under New York G.B.L. § 340 *et seq.*  In accordance with New York G.B.L. § 340.5, Plaintiffs will serve a copy of this Complaint on the New York Attorney General.

124.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **North Carolina General Statutes**, N.C. Gen. Stat. § 75-1, et seq.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1 *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under North Carolina Gen. Stat. §§ 75-1 *et seq.*

125.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **North Dakota Uniform State Antitrust Act,** N.D. Cent. Code § 51-08.1, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and

37

1    members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

2    and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD

3    Suspension Assemblies.

4         b.    During the Class Period, Defendants' illegal conduct substantially

5    affected North Dakota commerce.

6         c.    As a direct and proximate result of Defendants' unlawful conduct,

7    Plaintiffs and members of the Damages Class have been injured in their business and property

8    and are threatened with further injury.

9         d.    By reason of the foregoing, Defendants have entered into agreements in

10   restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01 *et seq.* Accordingly,

11   Plaintiffs and members of the Damages Class seek all forms of relief available under North

12   Dakota Cent. Code §§ 51-08.1-01 *et seq.*

13        126.   Defendants have entered into unlawful agreements in restraint of trade in

14   violation of the **Oregon Antitrust Law**, Or. Rev. Stat. § 646.705, *et seq.*

15        a.    Defendants' combinations or conspiracies had the following effects: (1)

16   HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated

17   throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

18   stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the

19   Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

20   the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

21   Assemblies.

22        b.    During the Class Period, Defendants' illegal conduct substantially

23   affected Oregon commerce.

24        c.    As a direct and proximate result of Defendants' unlawful conduct,

25   Plaintiffs and members of the Damages Class have been injured in their business and property

26   and are threatened with further injury.

27        d.    By reason of the foregoing, Defendants have entered into agreements in

28   restraint of trade in violation of Or. Rev. Stat. § 646.075, *et seq.* Accordingly, Plaintiffs and

                                    38

**COMPLAINT**

members of the Damages Class seek all forms of relief available under Or. Rev. Stat. § 646.075, *et seq.*

127. Defendants have entered into unlawful agreements in restraint of trade in violation of the **Rhode Island Antitrust Act**, R.I. Gen. Laws §§ 6-36-1, *et seq.*

a. Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of R.I. Gen. Laws §§ 6-36-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under R.I. Gen. Laws §§ 6-36-1, *et seq.*

128. Defendants have entered into unlawful agreements in restraint of trade in violation of the **South Dakota Antitrust Statute**, S.D. Codified Laws § 37-1-3.1. *et seq.*

a. Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

**COMPLAINT**

b.      During the Class Period, Defendants' illegal conduct substantially affected South Dakota commerce.

c.      As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1 *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under South Dakota Codified Laws Ann. §§ 37-1 *et seq.*

129.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Tennessee Trade Practices Act**, Tenn. Code Ann. § 47-25-101, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101 *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Tennessee Code Ann. §§ 47-25-101 *et seq.*

130.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **Utah Antitrust Act**, Utah Code Ann. § 76-10-911, *et seq.*

40

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Utah commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Ann. § 76-10-911, et seq.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under the Utah Antitrust Act.

131.    Defendants have entered into unlawful agreements in restraint of trade in violation of the **West Virginia Antitrust Act**, W. Va. Code § 47-18-1, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected West Virginia commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

**COMPLAINT**

1        d.     By reason of the foregoing, Defendants have entered into agreements in

2   restraint of trade in violation of West Virginia Code §§ 47-18-1 *et seq.* Accordingly, Plaintiffs

3   and members of the Damages Class seek all forms of relief available under West Virginia Code

4   §§ 47-18-1 *et seq.*

5        132.     Defendants have entered into unlawful agreements in restraint of trade in

6   violation of the **Wisconsin Antitrust Act,** Wis. Stat. § 133.01, *et seq.*

7        a.     Defendants' combinations or conspiracies had the following effects: (1)

8   HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated

9   throughout Wisconsin; (2) HDD Suspension Assemblies prices were raised, fixed, maintained,

10  and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the

11  Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

12  Assemblies.

13       b.     During the Class Period, Defendants' illegal conduct substantially

14  affected Wisconsin commerce.

15       c.     As a direct and proximate result of Defendants' unlawful conduct,

16  Plaintiffs and members of the Damages Class have been injured in their business and property

17  and are threatened with further injury.

18       d.     By reason of the foregoing, Defendants have entered into agreements in

19  restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.* Accordingly, Plaintiffs and

20  members of the Damages Class seek all forms of relief available under Wisconsin Stat.

21  §§133.01 *et seq.*

22       133.     Plaintiffs and members of the Damages Class in each of the above states have

23  been injured in their business and property by reason of Defendants' unlawful combination,

24  contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid

25  more for HDD Suspension Assemblies than they otherwise would have paid in the absence of

26  Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states

27  were designed to prevent and flows from that which makes Defendants' conduct unlawful.

28

**COMPLAINT**

134.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiffs and the members of the Damages Class.

135.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**C.    Third Claim for Relief: Violation of State Consumer Protection and Unfair Competition Statutes**

136.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

137.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

138.    Defendants have knowingly entered into unlawful agreements in restraint of trade in violation of the **Arkansas Deceptive Trade Practices Act**, Ark. Code Ann. § 4-88-101, *et seq.*

a.      Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Arkansas by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Arkansas, and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

b.      The foregoing conduct was unfair, unconscionable, or deceptive within the conduct of commerce within Arkansas.

c.      Defendants' conduct misled consumers, withheld materials facts, and resulted in material misrepresentations to Plaintiffs and members of the Damages Class.

d.      Defendants' conduct was willful.

43

1    e.    Defendants' unlawful conduct had the following effects: (1) HDD
2  Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout
3  Arkansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized
4  at artificially high levels throughout Arkansas; (3) Plaintiffs and members of the Damages Class
5  were deprived of free and open competition; and (4) Plaintiffs and members of the Damages
6  Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

7    f.    During the Class Period, Defendants' illegal conduct substantially
8  affected Arkansas commerce and consumers.

9    g.    As a direct and proximate result of Defendants' conduct, Plaintiffs and
10 members of the Damages Class have been injured in their business and property and are
11 threatened with further injury.

12   h.    By reason of the foregoing, Defendants have engaged in deceptive and
13 unconscionable trade practices in violation of Arkansas Code § 4-88-107(a) (10), and
14 accordingly, Plaintiffs and members of the Damages Class seek all relief available under Ark.
15 Code Ann § 4-88-113.

16 139.   Defendants have engaged in unfair competition or unfair, unconscionable,
17 deceptive or fraudulent acts or practices in violation of the **California Unfair Competition**
18 **Law**, Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL"):

19   a.    During the Class Period, Defendants committed and continue to commit
20 acts of unfair competition, as defined by the UCL, by engaging in the acts and practices
21 specified above.

22   b.    This claim is instituted pursuant to Sections 17203 and 17204 of the
23 California Business and Professions Code, to obtain restitution from Defendants for acts, as
24 alleged herein, that violated the UCL.

25   c.    The Defendants' conduct as alleged herein violated Section 17200.  The
26 acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged
27 herein, constituted a common continuous and continuing course of conduct of unfair competition
28 by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of

44

1  the UCL, including, but not limited to, the violations of Section 16720, *et seq.,* of the California

2  Business and Professions Code, set forth above;

3         d.    Defendants' acts, omissions, misrepresentations, practices and non-

4  disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the

5  California Business and Professions Code, and whether or not concerted or independent acts, are

6  otherwise unfair, unconscionable, unlawful or fraudulent; Defendants' act and practices are

7  unfair to consumers of HDD Suspension Assemblies in the State of California and throughout

8  the United States, within the meaning of the UCL; and

9         e.    Defendants' acts and practices are fraudulent or deceptive within the

10  meaning of the UCL.

11         f.    Plaintiffs and members of the Damages Class are entitled to full

12  restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits

13  that may have been obtained by Defendants as a result of such business acts or practices.

14         g.    The unlawful and unfair business practices of Defendants, as described

15  above, has caused Plaintiffs and the members of the Damages Class to pay supra-competitive

16  and artificially-inflated prices for HDD Suspension Assemblies.  Plaintiffs and members of the

17  Damages Class suffered injury in fact and lost money or property as a result of such unfair

18  competition.

19         h.    As alleged in this Complaint, Defendants and their co-conspirators have

20  been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair

21  competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to

22  equitable relief including restitution and/or disgorgement of all revenues, earnings, profits,

23  compensation and benefits which may have been obtained by Defendants as a result of such

24  business practices, pursuant to California Business & Professions Code §§ 17203 and 17204.

25      140.    Defendants have engaged in unfair competition or unfair, unconscionable, or

26  deceptive acts or practices in violation of the **District of Columbia Consumer Protection**

27  **Procedures Act**, D.C. Code § 28-3901, et seq.

28

45

1    a.  Plaintiffs and the Damages Class purchased HDD Suspension Assemblies

2 for personal, family, or household purposes.

3    b.  Defendants agreed to, and did in fact, act in restraint of trade or commerce

4 by affecting, fixing, controlling and/or maintaining, at artificial and/or non- competitive levels,

5 the prices at which HDD Suspension Assemblies were sold, distributed or obtained in the

6 District of Columbia.

7    c.  The foregoing conduct constitutes "unlawful trade practices," within the

8 meaning of D.C. Code § 28-3904. Plaintiffs were not aware of Defendants' price-fixing

9 conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.

10 There was a gross disparity of bargaining power between the parties with respect to the price

11 charged by Defendants for HDD Suspension Assemblies. Defendants had the sole power to set

12 that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any

13 meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of

14 the unlawful overcharge and there was no alternative source of supply through which Plaintiffs

15 could avoid the overcharges. Defendants' conduct with regard to sales of HDD Suspension

16 Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension

17 Assemblies at supra-competitive levels and overcharge consumers, was substantively

18 unconscionable because it was one-sided and unfairly benefited Defendants at the expense of

19 Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression

20 of competition that has resulted from Defendants' conspiracy has ultimately resulted in

21 unconscionably higher prices for consumers so that there was a gross disparity between the price

22 paid and the value received for HDD Suspension Assemblies.

23    d.  Defendants' unlawful conduct had the following effects: (1) HDD

24 Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout

25 the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained,

26 and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and

27 the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the

28

**COMPLAINT**

Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

   e.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, et seq., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under the statute.

   141.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Florida Deceptive and Unfair Trade Practices Act**, Fla. Stat. §§ 501.201, *et seq*.

   a.  The foregoing conduct constitutes "unfair methods of competition," and "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Florida Stat. § 501.204.

   b.  Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

   c.  During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

   d.  As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with future injury.

   e.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201 *et seq.*, and accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**COMPLAINT**

142.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Hawaii Unfair and Deceptive Trade Practices Act**, Haw. Rev. Stat. § 480-2.

      a.    Plaintiffs and members of the Damages Class purchased HDD Suspension Assemblies for personal, family or household purposes.

      b.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

      c.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

      d.    As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with future injury.

      e.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480-2.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Hawaii Rev Stat. § 480 *et seq*.

143.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Massachusetts Consumer Protection Act**, Mass. G.L. c. 93A, § 1, *et seq*.

      a.    Defendants and their co-conspirators were engaged in trade or commerce as defined by G.L. c. 93A.

      b.    Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Massachusetts.

**COMPLAINT**

1       c.     Defendants and their co-conspirators took efforts to conceal their

2 agreements from Plaintiffs and members of the Damages Class.

3       d.     The foregoing conduct constitutes "unfair competition or unfair or

4 deceptive acts or practices" within the meaning of Massachusetts G.L. c. 93A, §2 *et seq.*

5       e.     During the Class Period, Defendants' and their co-conspirators' illegal

6 conduct substantially affected Massachusetts commerce and consumers.

7       f.     Defendants' unlawful conduct had the following effects: (1) HDD

8 Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout

9 Massachusetts; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and

10 stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the

11 Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

12 the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

13 Assemblies.

14       g.     As a direct and proximate result of Defendants' conduct, Plaintiffs and

15 members of the Damages Class have been injured and are threatened with future injury.

16       h.     By reason of the foregoing, Defendants have engaged in unfair

17 competition or unfair or deceptive acts or practices in violation of Massachusetts G.L. c. 93A,

18 §2. Defendants and their co-conspirators' violations of Chapter 93A were knowing or willful,

19 entitling Plaintiffs and members of the Damages Class to multiple damages.

20       i.     Pursuant to Mass. Gen. Laws ch. 93A, §9, certain of the Defendants have

21 or will be served with a demand letter, or, upon information and belief, such service of a demand

22 letter was unnecessary due to the defendant not maintaining a place of business within the

23 Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

24     144.     Defendants have engaged in unfair competition or unfair, unconscionable, or

25 deceptive acts or practices in violation of the **Michigan Consumer Protection Act**, Mich.

26 Comp. Laws Ann. § 445.901, *et seq.*

27

28

49

**COMPLAINT**

a.      Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Michigan.

b.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Michigan, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

c.      Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

d.      Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

e.      Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

f.      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

g.      The foregoing acts and practices constituted unfair, unconscionable, or deceptive acts or practices in violation of the Michigan Consumer Protection Act.

50

h.      As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under the Michigan Consumer Protection Act.

145.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Minnesota Consumer Fraud Act**, Minn. Stat. § 325F.68, *et seq*.

a.      Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Minnesota.

b.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Minnesota, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

c.      Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

d.      Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

e.      Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

**COMPLAINT**

1    f.    Defendants' unlawful conduct had the following effects: (1) HDD

2  Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout

3  Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

4  stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the

5  Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

6  the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

7  Assemblies.

8    g.    As a direct and proximate result of the above-described unlawful

9  practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or

10  property. Accordingly, Plaintiffs and members of the Damages Class seek all relief available

11  under the Minnesota Consumer Fraud Act.

12    146.    Defendants have engaged in unfair competition or unfair, unconscionable, or

13  deceptive acts or practices in violation of the **Missouri Merchandising Practices Act**, Mo.

14  Rev. Stat. § 407.010, *et seq.* (the "MMPA").

15    a.    Plaintiffs and members of Damages Class purchased HDD Suspension

16  Assemblies primarily for personal, family, or household purposes.

17    b.    Defendants and their co-conspirators engaged in the conduct described

18  herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a

19  market that includes Missouri.

20    c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix,

21  control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD

22  Suspension Assemblies were sold, distributed, or obtained in Missouri, which conduct

23  constituted unfair and deceptive trade practices in that it was unlawful under federal and state

24  law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial

25  injury to Plaintiffs and the members of the Damages Class.

26    d.    Defendants concealed, suppressed, and omitted to disclose material facts

27  to Plaintiffs and the members of the Damages Class concerning their unlawful activities and

28  artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and

52

1   omitted facts would have been important to Plaintiffs and members of the Damages Class as

2   they related to the cost of HDD Suspension Assemblies they purchased.

3          e.     Defendants misrepresented the real cause of price increases and/or the

4   absence of price reductions in HDD Suspension Assemblies by making public statements that

5   were not in accord with the facts.

6          f.     Defendants' statements and conduct concerning the price of HDD

7   Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs

8   and members of the Damages Class to believe that they were purchasing HDD Suspension

9   Assemblies at prices established by a free and fair market.

10          g.     Defendants' unlawful conduct had the following effects: (1) HDD

11   Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout

12   Missouri; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized

13   at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class

14   were deprived of free and open competition; and (4) Plaintiffs and members of the Damages

15   Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

16          h.     The foregoing acts and practices constituted unlawful practices in

17   violation of the MMPA, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or

18   employment by any person of any deception, fraud, false pretense, false promise,

19   misrepresentation, unfair practice or the concealment, suppression, or omission of any material

20   fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ."

21          i.     As a direct and proximate result of the above-described unlawful

22   practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or

23   property. Accordingly, Plaintiffs and members of the Damages Class seek all relief available

24   under MMPA, specifically Mo. Rev. Stat.  407.020, as further interpreted by the Missouri Code

25   of State Regulations, 15 CSR 60-7.010, *et seq*., 15 CSR 60-8.010, *et seq.,* and 15 CSR 60-9.010,

26   *et seq*., and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

27

28

**COMPLAINT**

147.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Montana Unfair Trade Practices Act**, Mont. Code, §§ 30-14-201 to -225.

      a.    Plaintiffs and members of the Damages Class purchased HDD Suspension Assemblies primarily for personal, family, or household purposes.

      b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Montana.

      c.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Montana; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

      d.    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

      e.    Defendants' foregoing conduct constitutes "unfair or deceptive acts or practices in the conduct of any trade or commerce," within the meaning of Montana Code § 30-14-103.

      f.    As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Damages Class have been injured, and are threatened with further injury. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Montana Code § 30-14-101, *et seq.*

148.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Nebraska Consumer Protection Act**, Neb. Rev. Stat. § 59-1602, *et seq.*

**COMPLAINT**

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Nebraska.

b.      The foregoing conduct constitutes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Neb. Rev. Stat. § 59-1602.

c.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

d.      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Nebraska Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

e.      As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with future injury.

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1602, *et seq.*, and accordingly,  Plaintiffs and members of the Damages Class seek all relief available under Neb. Rev. Stat. § 59-1614.

149.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Nevada Deceptive Trade Practices Act**, Nev. Rev. Stat. § 598.0903, *et seq.*

a.      Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Nevada.

b.      Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Nevada, which conduct constituted

55

unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

c.     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

d.     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

e.     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

f.     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

g.     The foregoing acts and practices constituted deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act.

h.     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Neb. Rev. Stat. § 598.0993.

56

**COMPLAINT**

150.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **New Hampshire Consumer Protection Act**, N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq*.

      a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New Hampshire.

      b.    Defendants' conduct was intended to deceive New Hampshire consumers regarding the nature of Defendants' actions within the stream of New Hampshire commerce.

      c.    Defendants' conduct was willful and knowing.

      d.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiffs and Class members' ability to protect themselves.

      e.    The foregoing conduct constitutes unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Rev. Stat. §358-A:2, *et seq*.

      f.    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

      g.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

      h.    As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      i.    By reason of the foregoing, Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Rev. Stat. §358-A:2, and

57

accordingly, Plaintiffs and members of the Damages Class seek all relief available under §§ 358-A:10 and 358-A:10-a of that statute.

151.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **New Mexico Unfair Practices Act**, N.M. Stat. § 57-12-1, *et seq.*

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New Mexico.

b.     Defendants also took efforts to conceal their agreements from the Plaintiffs and members of the Damages Class.

c.     The foregoing conduct constitutes "unfair or deceptive trade practices" and "unconscionable trade practices in the conduct of any trade or commerce" within the meaning of New Mexico Stat. § 57-12-3, in that such conduct resulted in a gross disparity between the value received by Plaintiffs and members of the Damages Class and the prices paid by them for HDD Suspension Assemblies as set forth in New Mexico Stat. § 57-12-2E. Plaintiffs and members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies. Defendants had the sole power to set that price and Plaintiffs and class members had no power to negotiate a lower price. Moreover, Plaintiffs and class members lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which they could avoid the overcharges. Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage

58

1   of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has

2   ultimately resulted in unconscionably higher prices for consumers so that there was a gross

3   disparity between the price paid and the value received for HDD Suspension Assemblies.

4          d.      During the Class Period, Defendants' illegal conduct substantially

5   affected New Mexico commerce and consumers.

6          e.      Defendants' unlawful conduct had the following effects: (1) HDD

7   Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout

8   New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and

9   stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the

10  Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

11  the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

12  Assemblies.

13         f.      As a direct and proximate result of Defendants' conduct, Plaintiffs and

14  members of the Damages Class have been injured and are threatened with further injury.

15         g.      Defendants have engaged in unfair competition or unfair or deceptive acts

16  or practices in violation of New Mexico Stat. § 57-12-1 *et seq.*, and accordingly, Plaintiffs and

17  members of the Damages Class seek all relief available under § 57-12-10.

18  152.   Defendants have engaged in unfair competition or unfair, unconscionable, or

19  deceptive acts or practices in violation of the **New York Deceptive Acts and Practices Law**,

20  N.Y. Gen. Bus. Law § 349, *et seq*.

21         a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce

22  by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels,

23  the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New

24  York.

25         b.      Defendants also took efforts to conceal its agreements from Plaintiffs and

26  members of the Damages Class.

27         c.      Defendants' secret agreements as described herein were not known to

28  Plaintiffs or members of the Damages Class.

59

1        d.     Defendants made public statements about the price of HDD Suspension
Assemblies that Defendants knew would be seen by New York consumers.  Such statements
either omitted material information that rendered them materially misleading or affirmatively
misrepresented the real cause of price increases for HDD Suspension Assemblies. Defendants
alone possessed material information that was relevant to consumers, but failed to provide the
information.

        e.     Because of Defendants' unlawful trade practices in the State of New
York, there was a broad impact on New York consumer class members, who indirectly
purchased HDD Suspension Assemblies; and Plaintiffs and members of the Damages Class have
been injured because they have paid more for HDD Suspension Assemblies than they would
have paid in the absence of Defendants' unlawful trade acts and practices.

        f.     Because of Defendants' unlawful trade practices in the State of New
York, Plaintiffs and members of the Damages Class who indirectly purchased HDD Suspension
Assemblies were misled to believe that they were paying a fair price for HDD Suspension
Assemblies, or that the price increases for HDD Suspension Assemblies were for valid business
reasons.

        g.     Defendants knew that their unlawful trade practices with respect to
pricing of HDD Suspension Assemblies would have an impact on New York consumers and not
just Defendants' direct customers;

        h.     Defendants knew that their unlawful trade practices with respect to
pricing of HDD Suspension Assemblies would have a broad impact, causing consumer class
members who indirectly purchased HDD Suspension Assemblies to be injured by paying more
for HDD Suspension Assemblies than they would have paid in the absence of Defendants'
unlawful trade acts and practices.

        i.     During the Class Period, Defendants, directly or indirectly through
affiliates that they dominated and controlled, manufactured, sold and/or distributed HDD
Suspension Assemblies in New York.

**COMPLAINT**

1          j.     During the Class Period, Defendants' illegal conduct substantially

2  affected New York commerce and consumers.

3          k.     As consumers, Plaintiffs and the members of the Damages Class were

4  targets of the conspiracy.

5          l.     The conduct of Defendants as described herein constitutes consumer-

6  oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which

7  resulted in consumer injury and broad adverse impact on the public at large, and harmed the

8  public interest of New York State in an honest marketplace in which economic activity is

9  conducted in a competitive manner.

10          m.     Defendants' unlawful conduct had the following effects: (1) HDD

11  Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout

12  New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

13  stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the

14  Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

15  the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

16  Assemblies.

17          n.     Plaintiffs and members of the Damages Class seek all relief available

18  pursuant to N.Y. Gen. Bus. Law § 349 (h).

19      153.   Defendants have engaged in unfair competition or unfair, unconscionable, or

20  deceptive acts or practices in violation of the **North Carolina Unfair Trade and Business**

21  **Practices Act**, N.C. Gen. Stat. § 75-1.1, *et seq*.

22          a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce

23  by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels,

24  the prices at which HDD Suspension Assemblies were sold, distributed or obtained in North

25  Carolina.

26          b.     Defendants also took efforts to conceal their agreements from Plaintiffs

27  and members of the Damages Class.

28

61

**COMPLAINT**

c.     The conduct of Defendants as described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina Gen. Stat. §75-1.1 *et seq.*, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d.     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

e.     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

f.     As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Damages Class have been injured.

g.     During the Class Period, Defendants, directly or indirectly through affiliates that they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in North Carolina.

h.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1 *et seq.*, and accordingly, Plaintiffs and members of the Damages Class seek all relief available under N.C. Gen. Stat. § 75-16.

154.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **North Dakota Unfair Trade Practices Law**, N.D. Cent. Code § 51-10, *et seq.*

a.     Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes North Dakota.

62

1        b.      Defendants and their co-conspirators agreed to, and did in fact affect, fix,

2  control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD

3  Suspension Assemblies were sold, distributed, or obtained in North Dakota, which conduct

4  constituted a fraudulent or deceptive act or practice and caused substantial injury to Plaintiffs

5  and members of the Damages Class.

6        c.      Defendants concealed, suppressed, and omitted to disclose material facts

7  to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and

8  artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and

9  omitted facts would have been important to Plaintiffs and members of the Damages Class as

10  they related to the cost of HDD Suspension Assemblies they purchased.

11        d.      Defendants misrepresented the real cause of price increases and/or the

12  absence of price reductions in HDD Suspension Assemblies by making public statements that

13  were not in accord with the facts.

14        e.      Defendants' statements and conduct concerning the price of HDD

15  Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs

16  and members of the Damages Class to believe that they were purchasing HDD Suspension

17  Assemblies at prices established by a free and fair market.

18        f.      Defendants' unlawful conduct had the following effects: (1) HDD

19  Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout

20  North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

21  stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the

22  Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

23  the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension

24  Assemblies.

25        g.      As a direct and proximate result of the above-described unlawful

26  practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or

27  property. Accordingly, Plaintiffs and the members of the Damages Class seek all relief available

28  under N.D. Cent. Code § 51-10-06.

**COMPLAINT**

155.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Oregon Unlawful Trade Practices Act**, Or. Rev. Stat. § 646.605, *et seq*.

a.     Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Oregon.

b.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Oregon.

c.     By reason of the conduct alleged herein, Defendants have violated Or. Rev. Stat. § 646.608, *et seq*.

d.     Defendants' conduct was conducted with intent to deceive Oregon consumers regarding the nature of Defendants' actions within the stream of Oregon commerce.

e.     Defendants made public statements that Defendants knew would be seen by Plaintiffs and members of the Damages Class; such statements created a likelihood of confusion or misunderstanding with respect to the real reasons that the prices of HDD Suspension Assemblies were rising; and, such statements either omitted material information that rendered the statements materially misleading and confusing, or affirmatively deceived such consumers about the real cause of price increases for HDD Suspension Assemblies.

f.     Because of Defendants' unlawful and unconscionable trade practices in Oregon, Plaintiffs and members of Damages Class were misled or deceived to believe that they were paying a fair price for HDD Suspension Assemblies or that the price increases for such products were for valid business reasons.

g.     Defendants knew that their violations with respect to pricing of HDD Suspension Assemblies would have a broad impact, causing persons who indirectly purchased HDD Suspension Assemblies to be injured by paying more for HDD Suspension Assemblies and products containing HDD Suspension Assemblies than they would have paid in the absence of Defendants' unlawful and unconscionable trade acts and practices.

**COMPLAINT**

h.   Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Oregon.

i.   Defendants' conduct misled Oregon consumers, withheld material facts, and had a direct or indirect impact upon Plaintiffs' and class members' ability to protect themselves.

j.   Defendants' violations substantially affected Oregon's trade and commerce.

k.   Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

l.   As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and the members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive trade practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

m.   By reason of the foregoing, Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.608, and accordingly, Plaintiffs and members of the Damages Class seek all relief available under §646.638 of that statute.

156.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Rhode Island Unfair Trade Practice and Consumer Protection Act**, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

a.   Plaintiffs and members of the Damages Class purchased HDD Suspension Assemblies primarily for personal, family, or household purposes.

b.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels,

65

the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Rhode Island.

c.     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' HDD Suspension Assembly prices were competitive and fair.

d.     Defendants made public statements that Defendants knew would be seen by Plaintiffs and members of the Damages Class who indirectly purchased HDD Suspension Assemblies primarily for personal, family or household purposes; such statements created a likelihood of confusion or misunderstanding with respect to the real reasons that the prices of HDD Suspension Assemblies were rising; and, such statements either omitted material information that rendered the statements materially misleading and confusing, or affirmatively deceived such consumers about the real cause of price increases for HDD Suspension Assemblies.

e.     Defendants' deception, including its affirmative misrepresentations and/or omissions concerning the price of HDD Suspension Assemblies, constitutes information necessary to Plaintiffs and members of the Damages Class relating to the cost of HDD Suspension Assemblies purchased.

f.     Because of Defendants' unlawful and unscrupulous trade practices in Rhode Island, Plaintiffs and members of the Damages Class who indirectly purchased HDD Suspension Assemblies primarily for personal, family or household purposes were misled or deceived to believe that they were paying a fair price for HDD Suspension Assemblies or that the price increases for HDD Suspension Assemblies were for valid business reasons.

g.     Defendants knew that their unscrupulous and unlawful trade practices with respect to pricing HDD Suspension Assemblies would have an impact on Rhode Island

66

natural persons who indirectly purchased HDD Suspension Assemblies primarily for personal, family or household purposes and not just Defendants' direct customers.

h.     Defendants knew that their violations with respect to pricing of HDD Suspension Assemblies would have a broad impact, causing natural persons who indirectly purchased HDD Suspension Assemblies primarily for personal, family or household purposes to be injured by paying more for HDD Suspension Assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

i.     Defendants' violations adversely affected public policy in Rhode Island.

j.     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assembly price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

k.     As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and the members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

l.     By reason of the foregoing, Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws § 6-13.1-1, *et seq.,* and accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

157.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of **South Carolina Unfair Trade Practices Act**, S.C. Code Ann. § 39-5-10, *et seq.*:

67

**COMPLAINT**

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in South Carolina.

b.      Defendants' conduct was willful.

c.      Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence.  Defendants misrepresented to all consumers during the Class Period that Defendants' HDD Suspension Assembly prices were competitive and fair.

d.      Defendants' deception, including their affirmative misrepresentations and/or omissions concerning the price of HDD Suspension Assemblies, constitutes information necessary to Plaintiffs and members of the Damages Class relating to the cost of HDD Suspension Assemblies they purchased.

e.      Because of Defendants' unlawful and unscrupulous trade practices in South Carolina, Plaintiffs and members of the Damages Class who indirectly purchased HDD Suspension Assemblies were misled or deceived to believe that they were paying a fair price for HDD Suspension Assemblies or that the price increases for HDD Suspension Assemblies were for valid business reasons.

f.      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assembly price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD Suspension Assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

**COMPLAINT**

g.     As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and the members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

h.     Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code Ann. § 39-5-10, *et seq.,* and accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

158.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **South Dakota Deceptive Trade Practices and Consumer Protection Law**, S.D. Codified Laws § 37-24, *et seq.*

a.     Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes South Dakota.

b.     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in South Dakota, which conduct constituted a deceptive act or practice, and caused substantial injury to Plaintiffs and members of the Damages Class.

c.     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

d.     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

69

e.      Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

f.      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assembly price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

g.      As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and the members of the Damages Class seek all relief available under S.D. Codified Laws § 37-24-31.

159.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Utah Consumer Sales Practices Act**, Utah Code Ann. § 13-11-1, *et seq.*:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Utah.

b.      Defendants are supplier within the meaning of Utah Code Ann. §§ 13-11-3.

c.      Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Utah.

d.      Defendants' conduct and/or practices were unconscionable and were undertaken in connection with consumer transactions.

70

1          e.     Defendants knew or had reason to know that their conduct was

2    unconscionable.

3          f.     Defendants knew that their violations with respect to pricing of HDD

4    Suspension Assemblies would have a broad impact, causing persons who indirectly purchased

5    HDD Suspension Assemblies primarily for personal, family or household purposes to be injured

6    by paying more for HDD Suspension Assemblies than they would have paid in the absence of

7    Defendants' unlawful trade acts and practices.

8          g.     Defendants deliberately failed to disclose material facts to Plaintiffs and

9    members of the Damages Class concerning Defendants' unlawful activities and artificially

10   inflated prices for HDD Suspension Assemblies.  Defendants owed a duty to disclose such facts,

11   and considering the relative lack of sophistication of the average consumer, Defendants

12   breached that duty by their silence.  Defendants misrepresented to all consumers during the

13   Class Period that Defendants' HDD Suspension Assembly prices were competitive and fair.

14         h.     Because of Defendants' unlawful and unconscionable trade practices in

15   Utah, Plaintiffs and members of the Damages Class who indirectly purchased HDD Suspension

16   Assemblies were misled or deceived to believe that they were paying a fair price for HDD

17   Suspension Assemblies or that the price increases for HDD Suspension Assemblies were for

18   valid business reasons.

19         i.     Defendants' unlawful conduct had the following effects: (1) HDD

20   Suspension Assembly price competition was restrained, suppressed, and eliminated throughout

21   Utah; (2) HDD Suspension Assembly prices were raised, fixed, maintained and stabilized at

22   artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were

23   deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class

24   paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

25         j.     As a direct and proximate result of Defendants' illegal conduct, Plaintiffs

26   and the members of the Damages Class suffered an ascertainable loss of money or property as a

27   result of Defendants' use or employment of unconscionable and deceptive commercial practices

28

                                        71

as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

k.  Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.,* and accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

160.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2453, *et seq.*

a.  Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in Vermont.

b.  Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence.  Defendants misrepresented to all consumers during the Class Period that Defendants' HDD Suspension Assembly prices were competitive and fair.

c.  Because of Defendants' unlawful and unscrupulous trade practices in Vermont, Plaintiffs and members of the Damages Class who indirectly purchased HDD Suspension Assemblies were misled or deceived to believe that they were paying a fair price for HDD Suspension Assemblies or that the price increases for HDD Suspension Assemblies were for valid business reasons.

d.  Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assembly price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assembly prices were raised, fixed, maintained and stabilized at

72

**COMPLAINT**

artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

e.      As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and the members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f.      Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of Vermont Stat. Ann. Title 9, § 2451 *et seq.,* and accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**161.**     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **West Virginia Consumer Credit and Protection Act**, W. Va. Code § 46A-6-101, *et seq*.

a.      Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes West Virginia.

b.      Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in West Virginia, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

c.      Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and

73

**COMPLAINT**

omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

          d.     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

          e.     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

          f.     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

          g.     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and the members of the Damages Class seek all relief available under W. Va. Code § 46A-6-106.

**D.**    **Fourth Claim for Relief: Unjust Enrichment and Disgorgement of Profits**

162.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

163.    Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims for Relief, *supra.*

164.    Defendants have been and will continue to be unjustly enriched through overpayments by Plaintiffs and the Class members and the resulting unlawful profits on the sales of HDD Suspension Assemblies.

74

165.     Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs of the members of the Damages Class for HDD Suspension Assemblies.

166.     Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

167.     Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

168.     Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased HDDs containing HDD Suspension Assemblies subject to Defendants' conspiracy would have been futile.

169.     Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and class members.

## XI.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray as follows:

A.  The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.  That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

a.  An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

b.  A *per se* violation of Section 1 of the Sherman Act;

c.  An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

75

COMPLAINT

d.   Acts of unjust enrichment by Defendants as set forth herein.

C.      That Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.      That Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.      That Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      That Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.      That Plaintiffs and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      That Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees as provided by law; and

I.      That the Court award Plaintiffs and the Classes they represent such other and further relief as may be necessary and appropriate.

## J.  **JURY DEMAND**

Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

76

**COMPLAINT**

1  Dated: November 22, 2019          By:      */s/ Mario N. Alioto*
                                              Mario N. Alioto (56433)
2                                             Joseph M. Patane (72202)
                                              Lauren C. Capurro (241151)
3                                             **TRUMP, ALIOTO, TRUMP & PRESCOTT,**
                                              **LLP**
4                                             2280 Union Street
5                                             San Francisco, CA  94123
                                              Telephone:  (415) 563-7200
6                                             Facsimile: (415) 346-0679
                                              malioto@tatp.com
7                                             laurenrussell@tatp.com

8
                                              Sylvie K. Kern (111751)
9                                             **Law Offices of Sylvie Kulkin Kern**
                                              2532 Lake Street
10                                            San Francisco, CA 94121
                                              (415) 221-5763
11                                            kernantitrustglobal@gmail.com

12
                                              Isaac Diel
13                                            **Sharp McQueen PA**
                                              Financial Plaza
14                                            6900 College Boulevard Suite 285
                                              Overland Park, Kansas 66211
15                                            (913) 661-9931
16                                            idiel@sharpmcqueen.com

17                                            Brian M. Sund
18                                            **MORRISON & SUND PLC**
                                              5125 County Road 101, Suite 200
19                                            Minnetonka, MN 55345
                                              tel: (952) 975-0050
20                                            fax: (952) 975-0058
                                              bsund@morrisonsund.com
21
22                                            Lawrence G. Papale (67068)
                                              **Law Offices of Lawrence G. Papale**
23                                            The Cornerstone Building
                                              1308 Main Street, Suite 117
24                                            St. Helena, CA 94574
                                              Tel:  707-963-1704
25                                            lgpapale@papalelaw.com

26                                            *Counsel for Plaintiffs*
27
28
                                         77

COMPLAINT